IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | ) | CASE NO. 1:10 CV 2857 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| JAMES M. KENNEDY, | ) | |
| | ) | MEMORANDUM OPINION |
| Defendant. | ) | |

This matter is before the Court on Plaintiff, Joe Hand Promotions, Inc.'s Motion for Partial Summary Judgment, seeking a determination of liability only on Counts One and Two of the Complaint. (ECF #32). Defendant, James M. Kennedy filed a Brief in Opposition to Plaintiff's Motion, and Plaintiff filed a Reply Brief in support of its position. (ECF #35, 36). After a thorough examination of all materials submitted by the parties and a review of the relevant law, for the reasons set forth below, this Court hereby grants Plaintiff's Motion for Partial Summary Judgment as to Count One, and denies the motion with regard to Count Two.

**Facts**[1]

Joe Hand Promotion's Inc. ("Joe Hand") is a closed-circuit distributor of sports and entertainment programming.  Pursuant to a Distributorship Agreement with Zuffa, LLC, doing business as "the Ultimate Fighting Championship," Joe Hand obtained the exclusive right to distribute Zuffa events through commercial closed circuit television.[2]  Zuffa maintained the right to show or distribute events to residences, and other living quarters via pay-per-view television and other modes of distribution.  Joe Hand had the authority to enter into agreements with DirecTV, Dish Network, other DBS satellite providers and individual cable system operators, which "shall act as authorization sources for their commercial customers utilizing that technology to broadcast the event."  Despite having permission to do so, Joe Hand Jr., President of Plaintiff Joe Hand Promotions Inc., attests that the company did not authorize any other company to transmit the program to Mr. Kennedy's commercial premises, nor did it sub-license the program at issue directly to Mr. Kennedy for use in his commercial establishment.

Joe Hand also provides the affidavit of an investigator who attests that he was in Mr. Kennedy's bar, Kennedy's Broadway Billiards, when he witnesses the broadcast of "commentary on the upcoming fight between Quinton Jackson and Wanderlei Silva."  The fight between

---

[1] Except as otherwise noted, the factual summary is based solely upon the undisputed facts set forth in the parties' statements of facts, the Plaintiff's Complaint, and the affidavits and other evidence filed with the Court as part of the summary judgment motion briefing. Those facts which are contested and have some support through the submitted affidavits or other evidence will be addressed in the body of the opinion, and shall be construed in the light most favorable to the Plaintiff as required under the Summary Judgment standards.

[2] This exclusive right to commercial closed circuit distribution is subject to certain exclusions not relevant in this case.

Quinton Jackson and Wanderlei Silva, was a program subject to the commercial distribution agreement described above.  The licensing and distribution for the this program, entitled "UFC 92" The Ultimate 2008, which was broadcast on December 27, 2008, included the rights to distribute the fight commentary, and under-card bouts.  James Kennedy, avers in his affidavit that he was not present on the day this program was shown, but that he gave permission from someone at the business to show the fight on their television.  He attests that in the past (beginning in November of 2008) he had ordered two similar broadcasts from the pay-per-view service of his Dish Network account, which he believed to be a commercial account.  He further attests that he "had no idea that this was conceivably illegal or that Dish Network did not have the right to sell the company the broadcast" at issue.

## **Summary Judgment Standard**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  The court will view the summary

judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole

function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## **Analysis**

Count One of the Complaint alleges that Mr. Kennedy violated 47 U.S.C. § 605.  Section 605 provides as follows:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.  No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit of for benefit of another not entitled thereto.  No person having received any intercepted radio communication or having become acquainted with the contents, substances, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted; shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

While a fine may be assessed only in cases of willful violations, when an aggrieved party brings suit under 47 U.S.C. **§** 605(e)(3)(A)**,** actual or statutory damages are to be awarded regardless of whether the Defendant's violation was willful, negligent, or otherwise intended.   The amount of

statutory damages available to an aggrieved party varies, ranging from $250.00 to $110,000.00, depending on the level of culpability determined by the Court, and is to be assessed in accordance with the damages provisions set forth in 47 U.S.C. § 605(e)(3)(C).

In this case, there is no evidence that would contradict Plaintiff's affidavit which attests that the Defendant received a satellite transmission of the program at issue, and that this program was displayed or used for the benefit of his business and/or the customers of his business. The evidence showing that Plaintiff had the exclusive rights to distribute the broadcast to commercial establishments has also not been refuted. Therefore, there is no question that Mr. Kennedy " receive[d] ... [an] interstate or foreign communication by radio and use[d] such communication (or any information therein contained) for his own benefit of for benefit of another not entitled thereto." This establishes a violation of 47 U.S.C. § 605(a), and entitles Plaintiff to damages as calculated in accordance with 47 U.S.C. § 605(e)(3)(C)**.** The determination of damages under the statute is dependent on factual determinations that cannot be made based on the evidence and arguments submitted in the Motion for Partial Summary Judgment. Therefore, summary judgment is appropriate on the issue of liability under Count One, although the question of the appropriate amount of damages remains for trial.

Count Two of the Complaint alleges that Mr. Kennedy violated 47 U.S.C. § 553(a)(1), which prohibits the interception or receipt of a communication service offered over a cable system, unless specifically authorized by a cable operator, or as may otherwise be specifically authorized by law. Courts have generally found that a violation of 47 U.S.C. § 605 occurs when communications are received via satellite broadcast, and a violation of 47 U.S.C. § 553 occurs if the signal is received via a cable broadcast. There is no evidence that Mr. Kennedy intercepted or received any

communication service offered over a cable system, therefore, the Court cannot grant summary judgment in favor of the Plaintiff on Count Two.  Further, Courts have generally held that a Plaintiff may not receive damages under both 47 U.S.C. § 605 and 553, for the same alleged interception or receipt of protected communications.  Therefore, as the Court has found liability under Section 605, and the Plaintiff has indicated its desire to proceed with a damages calculation under Section 605, as opposed to Section 553, there is no need to try the liability issues under Section 553.  Consequently, Count Two is, hereby, dismissed as moot.

## **Conclusion**

For the reasons set forth above, Plaintiff's Motion for Partial Summary Judgment is GRANTED as to Count One, and DENIED as to Count Two.   Count Two is dismissed as moot. Trial on Count Three (Conversion) and the damages issues associated with a violation of 47 U.S.C. § 605 remains set for March 26, 2012 at 8:30 a.m..   IT IS SO ORDERED.


 /s/ Donald C. Nugent  
DONALD C. NUGENT  
United States District Judge

DATED:   March 8, 2012