# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC. | ) | CASE NO.: 1:10-cv-02857 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD NUGENT |
| | ) | |
| vs. | ) | **JAMES M. KENNEDY'S BRIEF ON** |
| | ) | **DAMAGES** |
| | ) | |
| JAMES M. KENNEDY, | ) | |
| | ) | |
| Defendant. | ) | |

\* \* \* \* \*

On March 26, 2012 the Court conducted a damages hearing, having previously found James Michael Kennedy ("Kennedy") liable to the Plaintiff for a single violation of section 605(a) of the Federal Communications Act of 1934, 47 U.S.C. § 605 ("FCA"). Plaintiff filed a brief in support of its claim for damages on Thursday, March 23, 2012 (ECF 41).

The Plaintiff called no witnesses and offered no other evidence at the damages hearing. Nevertheless, Plaintiff, through counsel, indicated that it was electing to receive statutory or liquidated (as opposed to actual) damages under 47 U.S.C. § 605(e)(3)(C)(ii)(I). Plaintiff seeks a total of $20,000.00, which includes the maximum possible award of $10,000.00 under section 605(e)(3)(C)(i)(II) of the FCA,[1] plus an additional $10,000.00 in enhanced or "additional

---

[1]. The statute provides: "(ii) In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private

**DEFENDANT'S BRIEF ON DAMAGES**

damages" under section 605(e)(3) (C)(ii) because the violation was allegedly committed "willfully <u>and</u> for purposes of . . . commercial advantage or private gain." (Emphasis supplied.)

II

Kennedy's evidence offered at the hearing on March 26, 2012 showed that he opened a bar called "Kennedy's Broadway Billiards" in March 2001 in downtown Lorain, Ohio. It closed in late 2010.

Kennedy tried to get cable service before opening but was told by the cable provider (Time-Warner Cable) that it could not guarantee service by the grand opening date (in 2001). Kennedy turned to Dish Network (by looking in the Yellow Pages). A representative from Dish Network named Bonnie Watkins came to the bar. Watkins told Kennedy what he would need for two televisions in the bar and he told her to proceed. Dish Network's bills were sent to the bar in Kennedy's name; however, the bills were always paid by a Kennedy's Broadway Billiards check. While there was no indication on the checks that Kennedy's Broadway Billiards was a corporation, Kennedy's Affidavit in opposition to Plaintiff's Motion for Summary Judgment reflects that it was (ECF 35-1, ¶ 5 and Exh. A). (However, Kennedy testified he maintained the liquor license in his own name.)

The satellite service for the bar through Dish Network was still in effect on the date of the incident (Saturday, December 27, 2008). Kennedy testified that on this date someone from the bar – he believes was a bartender named Brandi Smith – called him for permission to "show a fight." Kennedy, who was playing on-line poker at the time, said "sure." He was told that there

---

financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section."

was a cost and he asked Smith to tell him the cost. She told him the cost and he authorized the purchase through the bar's Dish Network service. Kennedy had no idea he was doing anything illegal or unlawful.

Plaintiff contends – and Kennedy has no reason to disbelieve or quarrel with the contention – that between 20 and 30 people were in bar on December 27, 2008 (The "auditor" employed by the Plaintiff claimed this number in his Affidavit which was submitted as part of Plaintiff's Motion for Summary Judgment, ECF 32-1, appended to the Affidavit of Joe Hand, at p. 2.[2]) Kennedy testified there were eight pool tables (each table customarily used by two people at a time), 13 bar stools, and three stand-up tables in the bar. The maximum comfortable occupancy was about 35 people.

Kennedy did not advertise for the event, did not charge a cover charge, did not increase the price of drinks or food, and did nothing to promote the event by any means.

Contrary to Plaintiff's contention that there were six televisions in the bar (the Affidavit of Steve Parks appended to Joe Hand's Affidavit and filed as ECF 32-1), there were only three working televisions in the bar (There were two screens for playing Keno supplied by the Ohio Lottery Commission and one dysfunctional television.)[3]

While Kennedy had an occupancy permit for the bar from the City of Lorain, the permit did not list a specific number of people who could occupy the premises (Exh. F). Philip Dore,

---

[2]. Plaintiff's counsel claimed that this auditor's observations showed the bar was filling up over time. However, this is not what the affidavit shows. Rather, it shows there were three headcounts made and the numbers were 20, 26, and 30 but not necessarily in that order (ECF 32-1, Parks Aff. p. 2).

[3]. Steve Parks' Affidavit does not indicate how many of these "televisions" were on. See, ECF 32-1.

the fire chief for the City of Lorain from 2001 to 2004, testified that ordinarily the Lorain Fire Prevention Bureau would inspect the premises and then the City's Building Department would issue an occupancy permit. The occupancy permit issued to Kennedy (Exh. F) does not delineate the number of people allowed to occupy the premises. A worksheet prepared by someone (Dore speculated it may have been someone in the building department) for the occupancy permit was referred to but never introduced into evidence.

Kennedy testified the building in which the bar was located was about 3,000 square feet in area. Kennedy built out an office, two bathrooms, and the physical bar evidence in some of the photographs. He identified four photographs showing the interior of the space (Exhs. A-D) including the configuration of the pool tables and the bar. One photograph was of the outside of the building (Exh. E).

Kennedy testified the bar was initially financially successful but business slacked off considerably for various reasons including the state-wide ban on smoking in bars, the degradation of Lorain's downtown, and general economic conditions in the City. By December 2008 – the month when the event was broadcast – the bar's gross receipts <u>for the entire month</u> were only $8,000.00 ($266.67 per day).

Ordinarily only one person worked at the bar each day. Kennedy would often show up to open the bar, but the bartender would work alone and close up at the end of the night.

While Kennedy authorized "four or five" programs similar to the event at issue here to be broadcast in the bar, there is no other evidence that he had ever been sued or that he was a repeat

offender.[4]

### III

Defendant does not dispute that the FCA is a strict liability statute. Accordingly, Plaintiff was only required to prove the unauthorized exhibition of the event. See *KingVision Pay-Per-View, Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999) (the finding that bar had, without authorization, shown a preliminary bout required judgment in favor of the plaintiff); *Joe Hand Promotions, Inc. v. Macias*, No. H-11-1773, 2012 WL 950157 (S.D. Tex., March 19, 2012) at *2; *Joe Hand Promotions, Inc. v. Easterling, et al.*, No. 4:08 CV 1259, 2009 WL 1767579, at *4 (N.D. Ohio, June 22, 2009) (Magistrate Judge Gallas) (citing *Joe Hand Promotions, Inc. v. Williams*, No. 3:07-CV-406-JDM, 2009 WL 348294, at *2 (W.D. Ky., February 11, 2009)).

In determining whether to award monetary damages, the Court is to consider "both the nature of the violation in light of the statutory scheme involved, as well as the particular circumstances concerning the defendant's actions." *Nat'l Satellite Sports, Inc. v. Garcia*, No. Civ.A. 301CV1799D, 2003 WL 21448375, at *2 (N.D.Tex., June 18, 2003) (internal citations omitted).

A plaintiff may request an award of statutory damages between $1,000 and $10,000 for each violation of section 605. 47 U.S.C. § 605(e) (3)(C)(i)(II). However, where, as here, the violator was "not aware and had no reason to believe that his acts constituted a violation of this section" the law permits the court, "in its discretion to reduce the award of damages to a sum of not less than $250." 47 U.S.C. § 605(e)(3)(C)(iii).

---

[4]. Kennedy was sued by J &J Sports Productions, Inc. in this Court on the same date as Joe Hand Promotions, Inc. sued him. J & J Sports Productions, Inc. is also represented by Mr. Koberg. The case (1:10-cv-02740-CAB) is currently pending before Judge Boyko.

Plaintiff has adduced no evidence contesting Kennedy's testimony that he was not aware and had no reason to believe that by authorizing the purchase of the event through Dish Network he had violated the law. After all, Kennedy had used, and paid for through the bar's checking account, the Dish Network service at the bar for seven years without incident. Kennedy had never previously been questioned about, or sued regarding, any illegal activity related to showing such events there, and, most importantly, *paid for the event*. Simply put, there is no evidence of trickery or fraud on his part, nor of any other nefarious conduct by which he willfully, intentionally, or even negligently circumvented, adversely affected or trampled the Plaintiff's rights.

Unfortunately, there is no good faith defense to a violation of section 605(a). However, section 605(e)(3)(C)(iii) was inserted into the statute to reduces the sting of a strict liability statute for a person, like Kennedy, who is otherwise blameless for violating the statute:

> Subsection (C)(iii) also embodies the recognition that in those rare situations in which a violator of subsection (a) had absolutely no reason to believe that his acts constituted a violation of the law, the court may reduce the award to $100. It is not intended that this provision serve in any way as a defense to a determination of liability under subsection (a), but rather only as a provision to be exercised in the court's discretion for those rare instances of ignorance of the law on the part of one adjudged to have violated it.

130 Cong. Rec. 31,875 (1984) (Statement of Sen. Bob Packwood; emphasis added), reprinted in 1984 USCCAN at 4750-51; see also Pub. L. No. 100-667, § 205(11), 102 Stat. 3935, 3960 (1988) (codified at 47 U.S.C. § 605(e)(3)(C)(iii) (1988)) ($100 minimum provided by 1984 Act for violation of § 605 increased to $250 in 1988). See, *International Cablevision, Inc. v. Sykes* 997 F.2d 998 (2nd Cir. 1993);

Several cases have held that a court should exercise its discretion under section

605(e)(3)(C)(iii) only in 'those rare instances of ignorance of the law on the part of one adjudged to have violated it.' " *DIRECTV, Inc. v. Boonstra*, 302 F. Supp.2d 822 (W.D. Mich. 2004) citing *Joe Hand Promotions, Inc. v. D.M.B. Ventures, Inc.*, No. Civ. A. No. 93–2656, 1995 WL 683847, at *2 (E.D. La., Nov.14, 1995) (internal citations omitted). Nevertheless, such a reduction is appropriate where, as here, there is no evidence that the defendant knew he was violating the law. See *Boonstra*, 302 F. Supp.2d 822 citing *Don King Prods. Kingvision v. Lovato*, No. C-95-2827, 1996 WL 682006, at *4 (N.D. Cal., November 15, 1996).

Just last month, the District Court for the Middle District of Tennessee, in *Joe Hand Promotions, Inc. v. Marshall*, No. 2:10-CV-00073, 2012 WL 300542 (M.D. Tenn. 2012) was confronted with identical legal claims as are made in this case in circumstances which are nearly identical to those in the case at bar. There Joe Hand Promotions, Inc. sued a woman who operated a bar (called the "Hot Spot") and who used a DirectTV installer to set up a satellite service in her bar. She testified, as Kennedy did here, that the installer was never told to set it up for residential service. The Court found it was "obvious to everyone that [she] was running a business and this was not [her] residence.'" *Id.* at * 1. The defendant asserted that her bar was generally not profitable . *Id.* (She grossed $649.00 on the night in question.) *Id.*

The District Court found that the defendant was not "aware of the violation and had no reason to believe her acts constituted a violation of 47 U.S.C.A. § 605; and therefore, the amount of statutory damages awarded to Plaintiff shall be reduced to $250.00." *Id.* at * 4. The District Court also found no basis for enhanced damages. *Id.*

The result in the *Marshall* case should pertain in this case. Kennedy used Dish Network for satellite service at the bar. He most assuredly never told the installer to set up the bar's

account as a residential account. (There is no evidence that the Dish Network account for the bar was anything other than a commercial account. The only thing that Plaintiff showed in its Motion for Summary Judgment was that Kennedy had not been authorized to display the event by the Plaintiff.) When the Dish Network representative came, she told Kennedy where the receiver "boxes" needed to be. It was obvious he was not living in the bar, which was about to open. (See Exhs. A and B). Unlike the defendant in Marshall, who at least grossed $649.00 on the night in question, Kennedy grossed $8,000.00 for the entire month of December 2008 at his bar. *Marshall* should inform this Court as to the proper resolution of this case.

Even where a court has found that section 605(e)(3)(C)(iii) of the FCA does not apply, or where the issue has not been raised (since most of the cases result in default judgments) and absent evidence of commercial advantage or financial gain, district courts have awarded the statutory minimum where the defendants were first-time offenders in establishments of similar size. See *Joe Hand Promotions, Inc. v. Williams*, 2011 U.S. Dist. LEXIS 138247 (E.D. Cal. Nov. 30, 2011) See, also, *J & J Sports Productions, Inc. v. Cardoze*, No. C 09-05683 WHA, 2010 WL 2757106 (N.D. Cal., July 9, 2010) (setting statutory damages of $1,000 and enhanced damages of $250 in bar and grill with capacity of 150 people, and seven television sets where 37 to 45 people were present while boxing bout was broadcast); *J & J Sports Productions, Inc. v. Rodriguez*, No. CIV S-08-1140 JAM DAD, 2010 WL 796942 (E.D. Cal., March 5, 2010) (setting statutory damages of $1000 and enhancements of $4,000 for a taqueria with seating capacity of 30 and 16 to 20 patrons during showing of boxing bout); *J & J Sports Productions v. Miranda*, 2009 U.S. Dist. LEXIS 112415, at *3-4 (N.D. Cal., Nov. 16, 2009) (awarding $1,000 in statutory damages for where the court found "no evidence that the violation occurred multiple times, that the establishment intended to directly profit from the violation, or that it actually

profited from the violation"); *J & J Sports Productions v. Hernandezsilva*, 2010 U.S. Dist. LEXIS 96891 (S.D. Cal., Sept. 15, 2010) (awarding $1,000 because "Plaintiff does not allege repeated violations, does not claim that Defendants advertised the event, and offers only conclusory statements in support of its contentions that Defendants realized financial gain from showing the program"); *Garden City Boxing Club, Inc. v. Nguyen*, 2005 U.S. Dist. LEXIS 29886, at *12 (E.D. Cal., Nov. 28, 2005) (awarding the statutory minimum and finding "no evidence of significant commercial advantage or private financial gain" where the defendant did not advertise or charge admission, and ten customers were present).

Not surprisingly, Plaintiff mentions none of these cases in its brief on damages. Rather, it argues that a "flat sum" of damages somehow is "inappropriate" because it "may do little to prevent such unlawful conduct in the future" and allegedly does not compensate the Plaintiff adequately (Brief on Damages, ECF 41, pp. 5-6).[5] What's more, Plaintiff claims there has been a "recent development" where courts have awarded "more significant damages in an effort to stem the pervasive problems of signal piracy." *Id.* at p. 6. Once again, no empirical evidence of such "piracy" has been adduced and, of course, the evidence in this case shows that nothing of the kind occurred.

---

[5]. While it is easy to make these claims, no empirical evidence of this claim was offered. Judging from the astounding volume of lawsuits filed by companies such as Joe Hand Promotions, Inc. (there are at least 300 cases in the Westlaw data base in the last 12 years), it appears that Plaintiff either has decided that such litigation is a profitable avenue to pursue, particularly since the statute makes its violation a strict liability offense, the potential damages are large, many alleged violators default, and the statute also enables it to recover its attorney's fees. This is a perfect storm for perpetual litigation. Consider, for a moment, through Mr. Koberg, Joe Hand has brought eight cases in the last two years in federal courts in Ohio alone (Westlaw search on March 26, 2012). Mr. Koberg has brought six other cases on behalf of J &J Sports Productions, Inc. during the same time frame in federal courts in Ohio. *Id.* This is but the tip of the iceberg.

The only district court case within the Sixth Circuit cited by Plaintiff is *Joe Hand Promotions v. Zia*, No. 07-12466, 2008 WL 495325 (E.D. Mich., Feb. 20, 2008). In that case, a corporate defendant *defaulted*. Without apparent analysis, the district court concluded "that a total statutory damage award of $20,000.00, is an appropriate award under the facts of this particular case. That $20,000.00 statutory damage award consists of a $10,000.00 award under § 605 and a $10,000.00 award under § 553." *Id.* at * 3. (As noted, the defendant defaulted and thus did not raise the fact that recovery under both statutes was not permissible.)[6]

Plaintiff cited in its brief, and at the damages hearing, the case of *Kingsvision Pay-Per-View, Ld. v. Gutierrez*, 544 F.Supp.2d 1179 (D. Colo. 2008). *Gutierrez* also involved defendants who defaulted ("By failing to answer the Complaint, Defendants have relieved the Plaintiff of the burden of proving its factual allegations."). *Id.* at 1183. Nevertheless, Plaintiff claims *Gutierrez* is a "good barometer" for determining its damages in this case. (ECF 41, p. 6.) Plaintiff is correct that 24 patrons were observed in the establishment at issue in *Gutierrez* and that the district court concluded that calculating damages on the basis of the occupancy at the time of the violation would not be "appropriate" because such "may do little to prevent such unlawful conduct in the future." *Id.* at 1184.

Indeed, virtually all of the cases cited by Plaintiff are cases which are quite factually different than the one at bar and involve defendants who defaulted. See, for example, *Joe Hand Promotions v. Tidmarsh*, No. 1:09-cv-00097 LJO GSA, 2009 WL 1845090 (E.D. Cal., June 26, 2009) (default); *J & J Sports Productions, Inc. v. Esquivel*, No.1:08-cv-00392 LJO GSA, 2008

---

[6]. See, *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 138 F.3d 449, 452 (2d Cir.1998) ("seeking damages under both § 553 and § 605 violates the general principle that precludes double recovery").

DEFENDANT'S BRIEF ON DAMAGES -10-

WL 4657741 (E.D. Cal.,Oct. 20, 2008 (default); *Joe Hand Promotions, Inc. v. Carranza* No. 1:09cv0984 LJO DL, 2009 WL 4254460 (E.D. Cal., November 24, 2009)(default); *J&J Sports Productions, Inc. v. Villalobos*, No. 1:09cv01130 AWI DLB, 2009 WL 5030137 (E.D. Cal., December 15, 2009); *Kingsvision Pay-Per-View, Ltd. v. Dosani*, No. CIV A H-06-1655, 2006 WL 3316988 (S.D. Texas, October 22, 2006) (default); *J&J Sports Productions, v. Papania*, No. No. 09-1754, 2010 WL 1191807 (W.D. La., March 26, 2010) (default).

Not surprisingly, Plaintiff takes issue with *Joe Hand Promotions v. Harmon*, No. 2:08-cv-604, 2009 WL 2591759 (S.D. Ohio, August 20, 2009), a case which was decided by Magistrate Judge Terence Kemp. In *Harmon*, a sports bar was found liable for its first unlawful exhibition of a boxing match. The court said:

> The circumstances surrounding the first violation on December 29, 2007, were not egregious. The defendants did not advertise the event, did not charge a cover, and did not increase food or drink prices for the evening in question. Furthermore, only twenty-four patrons were in the establishment at the time the program was aired, representing less than half of the number permitted under the applicable fire code. Total gross receipts for food and drink for both December 29, 2007, and December 30, 2007, were $722.22. According to the rate card provided by the plaintiff, the defendants would have been charged either $750 or $875 to have legally broadcast the UHC # 79 boxing program, depending on whether the seating capacity was 50, as claimed by the defendants, or 70, as the plaintiffs claim. The Court finds an award of $1,000 statutory damages to be appropriate for the defendants' first violation. This amount is greater than what the plaintiff would have charged the defendants to air the program. Such an award is also similar to what other courts have allowed based on the total number of patrons in the establishment at the time of the transmission.

*Id.* at * 1-2.

Plaintiff takes issue with this eminently reasonable analysis, claiming that it "creates a perverse incentive to violate the law." (ECF 41, p. 9). Hyperbole aside, this argument is off the mark here because the alleged "perverse incentive" is non-existent since Kennedy's bar went out of business in 2010 and, as Kennedy testified, he has spent two years dealing with the

"nightmare" of this lawsuit (with all of its attendant costs).

IV

In addition to a maximum award of statutory damages, Plaintiff seeks "additional" or "enhanced" damages of $10,000.00 from Kennedy.

In order to receive such damages, Plaintiff had to demonstrate that Kennedy acted "willfully and for purposes of . . . commercial advantage or private gain." 47 U.S.C. § 605 (e)(3)(C)(II).

The primary purpose behind enhanced damages is to deter future violations. See *J & J Sports Prods., Inc. v. Las Chivas*, No. 5:10-cv-187, 2012 WL 71819, at *3 (W.D. N.C., Jan. 10, 2012). It is clear that "the mere assertion that Defendant acted willfully is insufficient to justify enhanced damages." *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F.Supp.2d 1196, 1198 (N.D. Cal. 2000). Another court has noted that

> To establish significant commercial advantage or private financial gain, a plaintiff must allege something more than the mere airing of a pirated program, such as engaging in promotional advertising, imposing a cover charge, or charging a premium for food or drinks. The size of the audience, the establishment, or both is also relevant to the measure of enhanced damages, as is whether the customers are present primarily to watch the broadcast or have come for another purpose while the program is being aired.

*Integrated Sports Media, Inc. v. Naranjo*, 2010 WL 3171182 (E. D. Cal., Aug. 11, 2010) (internal quotation marks and citation omitted), citing *Backman*, 102 F.Supp.2d at 1198.

In the case at bar, Plaintiff failed to demonstrate any facts which support the claim that Kennedy engaged in "willful" misconduct and "for purposes of . . . commercial advantage or private gain." 47 U.S.C. § 605 (e)(3)(C)(II). (The statutory language requires both.)

Indeed, nothing in the record establishes that Defendant experienced significant – indeed *any* – "commercial advantage or private financial gain" as a result of airing the event. Plaintiff's

auditor determined that the highest head count in the bar was 30 persons. Moreover, the auditor, who did not testify, did not indicate how many of these persons may have been playing pool, which appears to have been the principal attraction at Kennedy's Broadway Billiards.

Plaintiff claims that merely showing the event was sufficient evidence of willfulness (ECF 41, p. 10). Plaintiff once again resorts to cases which are factually inapposite and in which the defendants defaulted. One of those cases is *Joe Hand Promotions, Inc. v. McBroom*, No. 5:09–cv–276(CAR), 2009 WL 5031580 (M.D. Ga., December 15, 2009). In that case, the court commented, in finding willfulness (and noting that Defendants had defaulted and thus admitted willfulness) that it was difficult to see how "Defendants could have accidentally intercepted and exhibited the encrypted Program; the signal had to be unscrambled by some deliberate act." *Id*. at * 5; See, too, *Entertainment by J & J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F.Supp.2d 769 (S.D. Tex.,2002) (enhanced damages were allowed in a summary judgment proceeding where the court reasoned that

> [b]ased on the limited methods of intercepting closed circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast merely by chance, however, courts have held conduct such as that of Al-Waha in this case to be willful and for the purposes of direct or indirect commercial advantage or private financial gain.

*Id*. at 776. However, the case at bar does not involve interception of an encrypted signal or other nefarious conduct. Rather, it involves an above board showing of a purchased program without an *iota* of knowledge or belief that anything unlawful was occurring.

V

During the hearing on March 26, 2012 the Court asked the undersigned about the interplay of his client's offer of judgment on Plaintiff's claims. While this interplay was addressed briefly on the record, Kennedy now provides a fuller statement of his position.

DEFENDANT'S BRIEF ON DAMAGES   -13-

Kennedy made an unequivocal offer of judgment for $2,000.00 on March 7, 2011 (ECF 13). Plaintiff never accepted (or even responded to) the offer.

The offer of judgment was made pursuant to Fed. R. Civ. P. 68 which provides, in pertinent part, as follows:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment.

Fed. R. Civ. P. 68. This Rule was drafted "to encourage settlement and avoid litigation." *Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620, 624 (6th Cir.2005), quoting *Marek v. Chesny*, 473 U.S. 1, 5, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). "The Rule prompts both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits." *Marek, supra* at 5. An offer is valid under Rule 68 so "long as the offer does not implicitly or explicitly provide that the judgment not include costs." *Markek, supra* at 6. Kennedy's offer of judgment did not implicitly or explicitly provide that the judgment did not include costs.[7]

Under Rule 68, if the defendant makes a valid offer of judgment, the plaintiff rejects it and the plaintiff recovers less than the offered amount at the conclusion of the case, then the plaintiff is responsible for his own costs and the costs of the defendant incurred <u>after the offer was rejected</u>. For purposes of actions such as this one, "costs" include attorney fees. *Marek,*

---

[7]. The Supreme Court said: "Accordingly, it is immaterial whether the offer recites that costs are included, whether it specifies the amount the defendant is allowing for costs, or, for that matter, whether it refers to costs at all. As long as the offer does not implicitly or explicitly provide that the judgment not include costs, a timely offer will be valid." Marek, *supra* at 6.

*supra* at 11; 47 U.S.C. § 407 ("a reasonable attorney's fee, to be taxed as a part of the costs of the suit"); *Fulps v. City of Springfield, Tenn.*, 715 F.2d 1088, 1095 (6th Cir.1983) (The "term 'costs,' as used in Rule 68, should be read to include attorney's fees where fees are authorized by the substantive statute at issue in the litigation"); *Goos v. National Ass'n of Realtors*, 68 F.3d 1380 (D.C. Cir. 1995), clarified on denial of rehearing 74 F.3d 300 (under rule governing offers of judgment, "costs incurred after making the offer" include attorney fees).

In the case at bar, if this Court awards judgment *for less than $2,000.00* – which is surely should – then Plaintiff is responsible for its own costs, including its attorney's fees, after March 7, 2011, as well as Defendant's costs and attorney's fees after that date by virtue of Fed. R. Civ. P. 68.

## CONCLUSION

For the reasons set forth above, James M. Kennedy respectfully requests that the Court order $250.00 in statutory damages, no "enhanced" or "additional damages," and award Plaintiff only its costs to March 7, 2011. He further requests that the Court reject Plaintiff's claim for costs after March 7, 2011 and award him his attorney's fees and costs incurred after March 7, 2011, which sum shall be provided to the Court by a separate pleading.

                Respectfully submitted,

                s/ Brent L. English
                BRENT L. ENGLISH
                LAW OFFICES OF BRENT L. ENGLISH
                M.K. Ferguson Plaza, Suite 470
                1500 West Third Street
                Cleveland, Ohio 44113-1422
                (216) 781-9917
                (216) 781-8113 (Fax)
                Sup. Ct. Reg. No. 0022678
                benglish@englishlaw.com
                *Attorney for Defendant, James Michael Kennedy*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of March 2012 the foregoing document was filed using the CM/ECF system, which will automatically provide service upon the following attorney's of record:

    Jeffrey L. Koberg, Esq. at jkoberg@zieglermetzger.com
    *Attorney for Joe Hand Promotions, Inc.*

                                  s/ Brent L. English
                                  BRENT L. ENGLISH
                                  LAW OFFICES OF BRENT L. ENGLISH
                                  *Attorney for Defendant, James Michael Kennedy*